IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| POTOMAC AUTO MALL HOLDINGS, INC., | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| BLUE CLOVER FINANCIAL, LLC, *et al.*, | ) |
|  | ) |
| *Defendants.* | ) |

Case No. 1:20-cv-865
Hon. Liam O'Grady

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's complaint.
*See* Dkt. 36. For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and
**DENIED IN PART.**

## I.   BACKGROUND

### a.   The parties

Plaintiff Potomac Auto Mall Holdings, Inc. is a limited liability company based in
Virginia and wholly owned by Jason Brown, a citizen of Virginia. Dkt. 1, at 2, ¶ 4–5.
Defendant Blue Clover Financial, LLC ("Blue Clover") is a limited liability company with its
principal place of business in Florida. *Id.* ¶ 7. Defendant Anthony Ricciardo, a citizen of
Florida, is the principal and controlling member of Blue Clover. *See id.* ¶¶ 8–11.

### b.   The parties' dealings

In 2018, Plaintiff sought to "purchase and develop real property in Virginia" from a third-
party buyer, Guy Travers. *Id.* at 3–4, ¶¶ 14, 25. Ricciardo learned of Plaintiff's endeavor
through a mutual acquaintance, and initiated contact with Plaintiff by phone during January 2018

to solicit Plaintiff's business. Dkt. 27-1, at 1. Ricciardo offered to finance Plaintiff's purchase of the Travers property. *Id.* The Parties subsequently negotiated and ratified a non-binding "Term Sheet" on February 28, 2018 that set forth tentative loan terms. *Id.* at 4–9. To enable Defendants to secure funding for the loan pursuant to the Term Sheet, Plaintiff wired $25,000 to them on February 28, 2018. Dkt. 1-1, at 4.

The provisions in the Term Sheet were later incorporated into a Lender Commitment Letter that was signed by Plaintiff on January 14, 2019. *See generally id.* The Letter is divided among "binding sections" and "non-binding sections." *Id.* at 1. The binding sections are drafted to survive the termination, expiration, and/or withdrawal of the loan commitment. *Id.* They included the following provisions:

- Expenses: Borrower shall pay, whether or not the Loan closes, all costs and expenses in connection with the Loan, including without limitation, the fees and disbursements of Lender's counsel, appraisal costs, the costs of engineering and environmental reports, title insurance premiums, survey charges, mortgage taxes, recording charges, due diligence fees and lockbox fees. . . .

- Expense Deposit: $25,000 has been paid. If the Expense Deposit at any time is insufficient to pay all of Lender's expenses, Managing Members shall within 5 days of receipt of a request from Lender deposit such additional amounts as Lender determines are necessary to cover its expenses. . . . Except as set forth herein, any remaining and unused Expense Deposit will be returned to the Borrower. . . .

- Brokerage Fees: The Borrower shall holder Lender harmless from all brokerage claims, if any, which may be made in connection with this transaction . . .

- Exclusivity: Prior to the earlier to occur of either (i) the termination of this Commitment or (ii) the Closing Date, neither Borrower or Guarantor will cause or permit any affiliates to obtain or attempt to obtain first lien financing for the same collateral with any party other than Lender. . . .

*Id.* at 3–6.

By contrast, performance of the non-binding sections is subject only to the "sole and absolute discretion" of Defendants. *Id.* at 1. These non-binding sections outline, *inter alia*, various loan terms. *See id.* at 1–6.

With financing apparently secured in accordance with the Commitment Letter, Plaintiff

moved forward with efforts to close on the Travers property. *See* Dkt. 1, at 3–4, ¶¶ 15–18.

Unfortunately for Plaintiff, funding was not, in fact, secured.  Over a six-month period between

October 2019 and March 2020, Defendants subjected Plaintiff to a proverbial run-around that is

best presented chronologically:

- Initially, Plaintiff was scheduled to close on the Travers property on October 21, 2019.
  *Id.* ¶ 17.  Right before closing, Defendants advised Plaintiff that "Blue Clover could not
  close on that date and rescheduled the closing to occur on November 5, 2019.  *Id.*

- On November 4, 2019, Plaintiff emailed Ricciardo to ensure that Blue Clover was on
  track to close the next day.  *Id.* ¶ 18.  Ricciardo did not respond.  *Id.*

- On November 5, 2019, Plaintiff emailed Ricciardo again, seeking an update.  *Id.*  In this
  email, Plaintiff explained that "the seller is anxious and will pull out if this does not
  happen, and I am at a very big loss."  *Id.*  Again, Ricciardo did not respond.  *See id.* at 4,
  ¶ 20.

- On November 7, 2019, Plaintiff emailed Ricciardo again, warning him that Blue Clover's
  "no show" was subjecting Plaintiff to legal risk.  *Id.* at 3–4, ¶ 19 ("[Travers] did notify
  my agent, [sic] and attorney that they are filing a breach of contract tomorrow, as we
  missed the October 21 closing date, as well as the November 5, [sic] closing.").  Again,
  Ricciardo did not immediately respond.  *See id.* at 4, ¶ 20.

- On November 8, 2019, an agent of Blue Clover finally contacted Plaintiff, notifying it
  that Blue Clover was "close" to closing.  *Id.*

- On November 13, 2019, Plaintiff spoke with Ricciardo by phone.  *Id.* ¶ 21.

- On November 15, 2019, Plaintiff followed up on the November 13, 2019 phone call with
  an email that sought clarification from Ricciardo on Blue Clover's position.  *Id.*  This
  email reiterated Plaintiff's legal risk: "As you know, we are well past my closing dates
  that Blue Clover gave me, and I am in default per my contract . . . My expenditures have
  been over $250,000.00 thus far, and I am very close to losing everything, as the seller
  will be pulling out on 11/22/19."  *Id.*

- On November 19, 2019, Plaintiff spoke with Ricciardo by phone.  *Id.* ¶ 22.  Ricciardo
  "assured [Plaintiff] that *he had the funds to close and closing would take place
  imminently*."  *Id.* (emphasis added).

- On November 21, 2019, Ricciardo doubled back, informing Plaintiff that Blue Clover
  "had a delay in [the] availability of funds that is causing [it] to not be able to fund
  [closing].  We expect to have funds available in the next 14 calendar days."  *Id.* ¶ 23.

- On November 22, 2019, Defendant Ricciardo contacted Travers, the third-party seller,
  asking him for an extension to the closing date.  *Id.* at 4–5, ¶ 25.  In this email, Ricciardo

explained that Blue Clover "expect[ed] to have funds available in the next 14 calendar days." *Id.*

- On November 30, 2019, Plaintiff emailed Ricciardo asking about "the financing that was to take place in the 'next 14 calendar days.'" *Id.* at 5, ¶ 27. Ricciardo "did not respond until December 2, 2019," at which point he provided no material update. *Id.*

- On December 5, 2019, counsel for Blue Clover emailed Plaintiff, confirming that Blue Clover, in fact, "ha[d] the clearance to close this loan next Wednesday." *Id.* ¶ 29. Based on this information, the closing was rescheduled for December 11, 2019. *Id.* at ¶ 30.

- December 11, 2019 came and went, and Blue Clover again failed to deliver financing. *Id.* at 6, ¶ 31.

- On December 15, 2019, Plaintiff emailed Ricciardo, asking for a status update. *Id.* ¶ 33. He again received no response. *Id.*

- On December 31, 2019, Plaintiff again followed up by email. *Id.* at ¶ 34.

- On January 7, 2020, Ricciardo finally responded to Plaintiff to advise him that Clover "won't have the ability to close on any projects until the end of February." *Id.* at ¶ 35.

- February came and went, and no funding was ever made available to Plaintiff. *Id.* at 7, ¶ 36. Plaintiff, at all times, was "willing and able" to close in full compliance with the terms of the Commitment Letter." *Id.* ¶ 37.

Over the course of the Parties' dealings and communications, Plaintiff estimates that it made "well over one hundred (100) telephone calls" to Ricciardo and other agents of Blue Clover. Dkt. 27-1, at 2. Plaintiff states that, as a result of Defendants' failure to provide it funding, it "suffered substantial damages including, but not limited to, lost opportunity costs, lost opportunity profits, amounts paid to Blue Clover and amounts incurred in the attempted purchase of real property," *id.* at 7, ¶ 38, including "$300,000 on [environmental experts and zoning experts]." *Id.* at 9, ¶ 56.

### c. Procedural history

On July 28, 2020, Plaintiff filed a complaint against Defendants in this Court, asserting breach of contract, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, tortious interference with contract, and fraudulent inducement under Virginia law. *See generally* Dkt. 1. On October 10, 2020, Defendants moved to dismiss the complaint for lack of personal

jurisdiction. Dkt. 22. The Court denied this motion. Dkt. 30. Defendants then filed the instant Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim on December 22, 2020. Dkt. 36. The matter is fully briefed and ripe for review. *See* Dkts. 37, 41, 42.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a Court evaluates a Plaintiff's claims under *Twombly-Iqbal*'s plausibility standard. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under this standard, the Court accepts as true the Plaintiff's well-pleaded allegations, and views the complaint in the light most favorable to the non-movant. *T.G. Slater & Son, Inc. v. Donald P. and Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). The Plaintiff must provide more than merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Specifically, it must "allege facts sufficient to raise a right to relief above the speculative level, stating a claim that is plausible on its face, rather than merely conceivable." *Vuyyuru v. Wells Fargo Bank, N.A.*, 2016 WL 356087, at *2 (E.D. Va. Jan. 28, 2016) (citing *Iqbal*, 556 U.S. at 678).

Rule 9(b) imposes a heightened pleading standard, according to which a Plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That particularity must reflect the time, place, and contents of a Defendant's misrepresentations, "as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (discussing the "who, what, when, where, and how" requirement for pleading fraud).

## III.   DISCUSSION

### a.   Count I: Breach of Contract as to Defendant Blue Clover

Under Virginia law,[1] "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

Plaintiff's contract claim centers primarily on the Defendants' "material breach of the Commitment Letter." *See* Dkt. 1, at 9–10, ¶¶ 59–60.  As explained above, the Commitment Letter, to which the Parties agreed, contained only four binding sections, none of which committed Defendants to disbursing the contemplated loan to Plaintiff.  The Letter's non-binding sections, denoted as such, *see* Dkt. 1-1, at 1, constitute, in aggregate, components of an "agreement to agree in the future" that is non-binding.  *See W.J. Schafer Assoc., Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 515, 520 (Va. 1997); *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 580 (E.D. Va. 2013), *aff'd*, 549 Fed. App'x. 211 (4th Cir. 2014); *Virginia Power Energy Mktg., Inc. v. EQT Energy, LLC*, 2012 WL 2905110, at *4 (E.D. Va. July 16, 2012).  Absent some language suggesting that the Parties structured the Commitment Letter to be accorded legal force in its entirety, the Court cannot give this instrument's non-binding sections binding effect.  *See Virginia Power Energy Mktg., Inc.*, 2012 WL 2905110, at *5 ("In determining whether there is mutual assent, courts look first to the language of the agreement itself."); *see also Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th

---

[1] *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002).  The Parties agree that Virginia substantive law governs this dispute. *Compare* Dkt. 37, at 5, 15, 19, *with* Dkt. 41, at 4, 11–12; *accord Women In Mil. Serv. For Am. Mem'l Found., Inc. v. Hartford Fire Ins. Co.*, 21 F. App'x 186, 191 (4th Cir. 2001) (citing *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970)); *Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998) (citing *Jones v. R.S. Jones and Assoc., Inc.*, 431 S.E.2d 33, 34 (Va. 1993)).  The Court will not interfere with the Parties' reasonable choice of law. *See Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 843 n.20 (E.D. Va. 2015).

Cir. 2002) (applying West Virginia Law) ("It is fundamental to contract law that mere participation in negotiations does not create a binding obligation, even if agreement is reached on all terms. More is needed than agreement on each detail—the parties must have intended to enter into a binding agreement.").

In its opposition, Plaintiff attempts to buttress and expand the scope of its breach of contract claim by introducing a new, superseding "Firm Commitment" letter issued by Defendants on July 19, 2019. *See generally* Dkt. 41-1, at 4. As an initial matter, this document was not attached by the movant, nor was it added to the Plaintiff's complaint, so it is not properly before the Court. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). But even if this Firm Commitment Letter had been properly attached, its contingent language (i.e., "We intend to be prepared to fund this loan") again evidences an "agreement to agree." *See W.J. Schafer*, 493 S.E.2d at 515, 520; *see also Smith v. Farrell*, 98 S.E.2d 3, 7 (Va. 1957) ("Another essential element of a valid contract is certainty . . . An uncertain contract is one which may, indeed, embrace all the material terms, but one of them is expressed in so inexact, indefinite or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect.").

The Court is not unsympathetic to Plaintiff, which is left without contractual remedy due to Defendant's artful drafting. But under Virginia law, the Court must "consider the words of a contract within the four corners of the instrument itself." *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014). That means construing the Parties' agreements "as written, without adding terms." *Id.* Courts are not within their discretion to imply contractual duties when the

7

Parties' activities are governed by express language. *See Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 456 (E.D. Va. 2014).

Though the Court finds the binding sections of the Commitment Letter to be heavily one-sided in favor of Defendants, it also cannot, as a matter of law, invalidate the contract based on the disparity of consideration. *See Jessee v. Smith*, 278 S.E.2d 793, 795 (Va. 1981) (citing Restatement (Second) of Contracts § 81) ("The general rule . . . is that parties to transactions are free to fix their own valuations and courts will not inquire into the adequacy of consideration, particularly when one or both of the values exchanged are variable or otherwise difficult to measure. That one party rues the bargain he struck does not excuse his performance. Courts cannot relieve one of the consequences of a contract merely because it was unwise."). Plaintiff granted Defendants exclusive lending rights and wired them a $25,000 deposit fee in exchange for Defendants' promise to perform pre-loan due diligence and incur associated expenses. Insofar as the Defendants have failed to perform their duties under this arrangement, "any remaining and unused [portion of the] Expense Deposit" may be recovered by Plaintiffs in Count I. Defendants do not dispute the availability of this redress. *See* Dkt. 37, at 4.

Plaintiff's partial motion to dismiss Count I is granted to the extent it pertains to claims concerning the non-binding sections contained in the Commitment Letter.

### b. Count II: Unjust Enrichment as to Defendant Blue Clover

At some point during Defendants' treatise on the distinction between unjust enrichment and *quantum meruit*, Dkt. 37, at 8–12, they outline the three elements of an unjust enrichment claim in Virginia: (1) A benefit conferred on the defendant by the plaintiff; (2) Knowledge on the part of the defendant of the conferring of the benefit; and (3) Acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the

8

benefit without paying for its value. *See T. Musgrove Constr. Co. v. Young*, 840 S.E.2d 337, 341 (Va. 2020); *Nossen v. Hoy*, 750 F. Supp. 740, 744–45 (E.D. Va. 1990).

A Plaintiff is generally entitled to "plead equitable theories such as unjust enrichment as an alternative to contract recovery" pursuant to Federal Rule of Civil Procedure 8(d)(2). *See* Dkt. 41, at 9; *see, e.g.*, *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D. Va. 2013) ("Although Defendants cannot recover for breach of contract and unjust enrichment, they are allowed to plead these inconsistent theories."). However, this rule does not apply where a Plaintiff's equitable theories are premised on a valid, written bargain. *See, e.g.*, *Com. & Indus. Ins. Co., Inc. v. Advance Tech., Inc.*, 2009 WL 10688418, at *1 (E.D. Va. Oct. 7, 2009) (citing *Swedish Civil Aviation v. Project Management Enterprises*, 190 F. Supp. 2d 785, 792 (D. Md. 2002)) ("[P]leading unjust enrichment as an alternative to a breach of contract claim is appropriate *where the validity or existence of an express contract governing the plaintiff's claims is in dispute*.") (emphasis added); *Koken v. Aon Risk Services, Inc.*, 2006 WL 90068, *7 (E.D. Va. 2006) ("Because the Court finds that a valid written contract exists, [Plaintiff] cannot proceed with her unjust enrichment claim.").

Plaintiff concedes that the value of its unjust enrichment claim can only total "the dollar amount of the monies paid to Defendants," (i.e., $25,000) and that "the measure of damages in [its] unjust enrichment claim would not properly include a claim for damages arising from [Defendants'] failure to close the loan." Dkt. 41, at 10; *see also* Dkt. 42, at 8. Plaintiff is therefore premising its unjust enrichment claim only on a valid, binding provision in the Parties' written Commitment Letter, and so Count II must fail. *See Com. & Indus. Ins. Co., Inc.*, 2009 WL 10688418, at *1.

9

### c.   Counts III and IV:  Fraudulent and Negligent Misrepresentation as to all Defendants

To state a claim for fraudulent misrepresentation under Virginia law, a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 477 (4th Cir. 2006) (citing *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998)).  A claim for negligent misrepresentation (i.e., constructive fraud) "requires the same allegations, except instead of pleading that the false representation was made intentionally and knowingly, 'the plaintiff is only required to plead that the false representation was made innocently or negligently.'" *Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 153 (4th Cir. 2020) (citing *Sales v. Kecoughtan Hous. Co. Ltd.*, 690 S.E.2d 91, 94 (Va. 2010)).

Defendants argue that Counts III and IV are barred by the economic loss doctrine and source of duty rule, which operate to preclude a litigant from turning "every breach of contract into a tort." *See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57 (Va. 1988); *see also Filak*, 594 S.E.2d at 614 ("As we explained in *Sensenbrenner*, losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.").  According to Defendants, the source of "[t]he duties owed by Defendants to Plaintiff as to providing a loan to develop Potomac Auto Mall on the Property identified in the Commitment Letter are wholly governed by the terms of the Commitment Letter," and so "Plaintiff's claims for recovery due to negligent and/or intentional misrepresentation and [sic] must be dismissed." Dkt. 37, at 14.

It is true that an action for fraudulent misrepresentation or negligent misrepresentation "may not be predicated on unfulfilled promises or statements about future events." *Sales*, 690

10

S.E.2d at 94. However, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *SuperValu, Inc. v. Johnson,* 666 S.E.2d 335, 342 (Va. 2008); *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985). And though a claim of negligent misrepresentation (i.e., constructive fraud) "may not be based on a promise of future action," *Supervalu Inc.*, 666 S.E.2d at 341, that claim does lie where a Defendant "has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994) (citing *Jefferson Standard Life Ins. Co. v. Hedrick*, 27 S.E.2d 198, 202 (Va. 1943)).

In the present case, Plaintiff alleges with particularity that on November 19, 2019, Defendants promised Plaintiff over the telephone that they had the funds to close. Dkt. 1, at 4, ¶ 22. Plaintiff also attests that on December 5, 2019, Defendants misrepresented that they "[had] the clearance to close [the] loan." These claims, if accurate, highlight false statements of present fact that were "represented as true." *See Evaluation Rsch. Corp.*, 27 S.E.2d at 202. They can accordingly give rise to fraudulent misrepresentation and negligent misrepresentation claims, as the availability of funds was a material fact, Plaintiff relied on Defendants' assurances reasonably and justifiably based on the Commitment Letter, and Plaintiff suffered damages because of the misrepresentations.[2]

---

[2] Rule 9(b) allows a Plaintiff asserting a fraudulent misrepresentation claim to allege "malice, intent, knowledge, and other conditions of a person's mind" generally. Fed. R. Civ. P. 9(b). Plaintiff satisfies this requirement with respect to the relevant elements of its fraudulent misrepresentation claim. *See* Dkt. 1, at 12, ¶¶ 78–79 ("Defendants made [their] misrepresentations knowingly and with the intention to mislead Plaintiff. Defendants also intended for Plaintiff to rely upon [their] false representations.").

Plaintiff also alleges facts with particularity that support a plausible inference that Defendants made promises they had no intention of keeping. *See SuperValu, Inc.*, 666 S.E.2d at 342. By way of example, on November 19, 2019, after assuring Plaintiff that Blue Clover "had the funds in place to close," Defendants represented that "closing would take place imminently." Dkt. 1, at 4, ¶ 22. Plaintiff's allegations, taken together, more than support the inference that Defendants had no intention of making good on this promise.[3] *SuperValu, Inc.*, 666 S.E.2d at 342.

Because the Court finds that Plaintiffs have validly stated claims of fraudulent and negligent misrepresentation, Defendants' motion to dismiss Counts III and IV is denied.

### d.  Count V: Tortious Interference with an Existing Contract as to all Defendants

To state a claim for tortious interference with contract under Virginia law, a Plaintiff must allege "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).

Defendants concede, as they must, that they were aware of Plaintiff's existing third-party real property contract with Travers. *See* Dkt. 37, at 18; *see also* Dkt. 1, at 3–4, ¶¶ 18–19, 21.

---

[3] Defendants argue that "no plausible theory would explain why Defendants would intentionally lie to Plaintiff about their intention to provide a loan for the proposed commercial real estate project." Dkt. 42, at 11. Nonsense. By refusing to admit their present inability to provide the loan to Plaintiff, Defendants preserved their exclusivity arrangement with Plaintiff, *see* Dkt. 1-1, at 5, thereby precluding Plaintiff from seeking an alternative funding source. This maintained the status quo, allowing Defendants to continue their efforts to secure the necessary funding. If successful, these efforts would have furnished Defendants with the Lender benefits outlined in the Commitment Letter, including a 4% origination fee on the loan, a 14% per annum loan interest rate, and a $2,500 per month draw/construction supervision fee. *See id.* at 1–2. In short, Defendants had every incentive to intentionally lie to Plaintiff about their ability to provide financing.

Still, they argue that "the Complaint fails to describe facts that show Defendants intentionally interfered with that contract thereby inducing or causing a breach or termination of the contract[.]" Dkt. 37, at 18; *see also* Dkt. 42, at 11 ("Plaintiff did not sufficiently allege facts suggesting that Defendants intentionally interfered in the Plaintiff's property purchase contract so as to cause Plaintiff to breach the contract and thereby sustain damages."). Defendants complain that Plaintiff does not show that Defendants acted with the specific intent to "sabotage Plaintiff's contract for the purchase of property." *Id.* at 12.

Though early Virginia case law provides less than pellucid guidance on the appropriate standard of requisite intent, *see, e.g., Chaves*, 335 S.E.2d at 102–03 (citing Restatement (Second) of Torts § 766 cmt. s) ("[T]he interferor's knowledge of the business relationship and his intent to disturb it are requisite elements; malice is not."), later cases have clarified that an interferor need not act "with the purpose of, or a partial desire to, interfere with the performance of another's contract" under Virginia law. *Com. Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 212–13 (4th Cir. 2001). Rather, "[t]he requisite level of intent . . . exists if the interferor 'knows that the interference is certain or substantially certain to occur as a result of his [or her] actions.'" *Id.* (citing Restatement (Second) of Torts § 766 cmt. j); *see also Watson v. Lee Bank & Tr. Co.*, 1982 WL 215202, at *7 (Va. Cir. Ct. May 7, 1982) ("That is not to say that the interfering party must specifically intend by his acts or conduct to interfere with the contract or business relation, although specific intent or actual malice may well support a cause of action even in the face of a claim of privilege or justification; it is sufficient if the interfering party did an intentional act with knowledge of the existence of an anticipated contract or business relationship reasonably knowing that the acts might induce a breach or noncompliance.").

13

There can be little doubt that Defendants knew their conduct would interfere with Plaintiff's third-party real property contract with Travers. That is all that is necessary to satisfy the third element of the tort of intentional interference with existing contract under Virginia law. Finding that all the remaining tort elements are satisfied, the Court denies Defendants' motion to dismiss Count V.[4]

### e.  Count VI: Fraudulent Inducement as to all Defendants

To state a claim for fraudulent inducement under Virginia law, a Plaintiff must show that a Defendant made "a false representation of a material fact, constituting an inducement to the contract, on which [the Plaintiff] had a right to rely." *JTH Tax, Inc. v. Aime*, 744 F. App'x 787, 794 (4th Cir. 2018) (citing *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 255 S.E.2d 682, 683 (Va. 1979)).

Count VI fails for the very simple reason that Plaintiff pleads no false representations on the part of Defendants that induced it to agree to the binding sections of the Loan Commitment Letter. Plaintiff resists this outcome by referencing Defendants' "prior statements" discussed in paragraph 24 of the complaint. *See* Dkt. 41, at 19. But those "prior statements" refer to comments made during a telephone conversation on November 19, 2019, nearly eleven months after the Loan Commitment Letter was signed. *Compare* Dkts. 1, at 3, ¶ 13, *with id.* at 4, ¶¶ 22, 24. In other words, Plaintiff pleads no causal connection between Defendants' misrepresentations and Plaintiff's decision to contract with Defendants. The Court must therefore dismiss Count VI.

---

[4] Defendants, on reply, abandon their argument that Plaintiff fails to "sufficiently detail information about the extent of damage to the Plaintiff resulting [from Defendants' interference]." *Compare* Dkt. 37, at 18–19, *with* Dkt. 42. This is a wise choice. Plaintiff pleads for damages in specific detail throughout its complaint. *See generally* Dkt. 1. To the extent Defendants argue that their conduct was not "improper," *see Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 493 S.E.2d 375, 376 (Va. 1997), this position is belied by the Court's finding that Defendants potentially engaged in tortious conduct (i.e., fraudulent and negligent misrepresentation), *see id.* at 379 (citing *Duggin v. Adams*, 360 S.E.2d 832, 836–37 (Va. 1987)).

## IV.   **CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART** AND **DENIES IN PART**

Defendants' Rule 12(b)(6) motion (Dkt. 36).  Counts II and VI are **DISMISSED** outright, Count

I is **DISMISSED IN PART**, and Defendants' motion to dismiss Counts III, IV, and V is

**DENIED**.  Defendants are **DIRECTED** the file an answer within fourteen (14) days of the date

of this Order.

It is **SO ORDERED.**

April ⟨16⟩, 2021                                  Liam O'Grady
Alexandria, Virginia                             United States District Judge

15